THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 08-cr-00378-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JOE CAMACHO,
    a.k.a., "joenoetoe1115"

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the Government), by and through Assistant United States Attorney Judith A. Smith, and the Defendant, Joe Camacho, personally and by counsel, Assistant Public Defender, LaFonda Jones, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to Fed. R. Crim. P. 11(c)(1)(B) and D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

*A.*      *Defendant's Obligations:* The Defendant agrees to plead guilty to Count Two of the Indictment charging him with a violation of 18 U.S.C. § 1470, Transfer of Obscene Matter to a Minor. The defendant agrees that the guideline calculation and enhancements outlined in this plea agreement properly apply to the defendant. The defendant also agrees not to seek a downward departure or variance from the sentencing guideline range. Defendant also agrees that

1



the Sex Offender Registration and Notification Act applies to the crime of conviction and agrees to comply with its requirements.

### B. Government's Obligations:

The government agrees to dismiss Count One of the Indictment charging Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b). Provided that the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 3 point reduction in the offense level for acceptance of responsibility is appropriate and agrees to make the appropriate motion at sentencing.

## II. MAXIMUM STATUTORY PENALTIES

Based on the Defendant's criminal history, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 1470 is not more than 10 years imprisonment, not more than $250,000 fine, or both, not more than 5 years supervised release, and $100 Special Assessment fee.

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, serve on a jury, and the Defendant will be required to register as a sex offender. A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## III. THE ESSENTIAL ELEMENTS OF THE OFFENSE OF CONVICTION

In order to sustain its burden of proof for the crime of Transfer of Obscene Material to Minors, the Government must prove the following essential elements beyond a reasonable doubt:

*One*: Defendant knowingly used any means or facility of interstate or foreign commerce to transfer obscene matter;

*Two:* The Defendant knew or believed that he was transferring obscene matter to an individual less than 16 years old;

*Third:* the defendant knew the general nature of the content of the obscene matter at the time it was transferred;

*Fourth:* the matter transferred was obscene.

To prove that matter is "obscene," the government must establish that (1) the material appeals predominantly to prurient interest; (2) that it depicts or describes sexual conduct in a patently offense way; and (3) that the material, taken as a whole, lacks serious literary, artistic, political, or scientific value.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties believe are relevant, pursuant to § 1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. § 6B1.4(b).

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§1B1.3) or to sentencing in general (§1B1.4). In "determining the

3

factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." §6B1.4 comm.

The parties agree that the government's evidence would be:

On December 5, 2007, Detective Cronce with the Douglas County Sheriff's Office entered a Yahoo! chat room entitled "Colorado Chat Room 4" using an undercover profile of a 14 year old female named "Lilly" who lives in Lone Tree Colorado. All of the servers that allow users on the Yahoo! chat rooms to talk to one another are located in California. Also, if a person uses a Yahoo! email address to send an email, all of the email content, as well as any attachments, must travel from servers in California before arriving at the end-user's computer. At all times in this case, Detective Cronce's computer was in Colorado, and all messages she received via email or chat from the defendant, were received on her computer in Colorado. Also, between December 18, 2007 and January 2, 2008, the defendant was working in Angola, Africa. As a result, any of his correspondence sent between those dates must have moved between Africa and Colorado.

When she logged on to the chat room on December 5, 2007, Detective Cronce used the screen name of "lillynowayloser" and an email address of lillyiscooler@yahoo.com. After logging in, the defendant contacted "Lilly" using a private message. Using this feature, he was able to privately chat with "Lilly" directly. He was using the screen name "joenotoe1115" and email address of joenotoe1115@yahoo.com. The name and picture associated with the screen name matched the defendant's picture and name. The two began to chat online in the chat room. During the first few lines of chat, the defendant asked "Lilly's" age, and Detective Cronce

4

answered that she was 14 years old. The defendant replied that it was "nice" and a few lines down asked what grade "Lilly" was in; Detective Cronce replied that she was in the 8th grade. "Joenotoe1115" then asked if "Lilly" liked older guys and he stated that he liked younger girls. He asked "Lilly" whether it was okay with her that he was 40 years old, which, at the time of these conversations, the defendant was 43 years old. Within fifteen minutes of beginning the chat with "Lilly," the defendant asked "Lilly" whether "a sex topic [would] be out of the question." During that portion of their chat, the defendant asked "Lilly" whether she masturbated, and whether she would masturbate for him. "Lilly" agreed, and he gave her specific directions on how to masturbate, and she indicated she was following his directions. He also used sexually explicit language and described what sex acts he wanted to perform on "Lilly," and what acts he wanted her to perform on him. The defendant also discussed meeting "Lilly" and having sex with her. During that portion of the conversation, the defendant stated: "but you know if I get caught, I could get into trouble." [sic]. They then exchanged email addresses and agreed to remain in contact.

On December 18, 2007, the defendant sent several emails to "Lilly" from his email address, joenotoe1115@yahoo.com, which was from a Yahoo! email account. The first of these contained an attachment titled "YanaCova.pps" and one titled "Zaenal_Company_Profile.pps". The "YanaCova.pps" attachment is a short video of an adult female who disrobes and touches her breasts, buttocks and her vagina. The "Zaenal_Company_Profile.pps" attachment is a video of an adult male and female engaging in intercourse in various positions to include oral sex on and around a poker table. On the same day, defendant sent a second email from the same

5

address to "Lilly" that contained one attachment titled "BetSheCanHulaHoop_.wmv". This was a video clip of what appeared to be and adult female straddling an adult male engaged in intercourse. In the text of the email, defendant stated that "Lilly" should read the first email and view the attachments. He then stated: "I am sending you a small video of a couple have sex and I hope you like it. . . . This is what I hope you want and I want to give it to you, but I first want you to know what to look for and how it is going to be done"

Finally, on that same day, the defendant sent "Lilly" a third email from the same address with an attachment of a photo of an adult female in the nude bending over in a bathroom with one leg propped up exposing her vagina and rectum. The defendant wrote in the body of the email that he hoped "Lilly" liked the picture, and that he would like to have sex with her over the bathroom sink.

The next day, on December 19, 2007, the defendant sent "Lilly" an email from his Yahoo! email address with an attachment titled "thegooddoctor.pps". This attachment is photos of adult male and a female engaged in various positions of intercourse in what looks to be a doctor's office. In the text of this email, the defendant states that "I hope you like this on, because I would want you to be my doctor and you could seduss me." [sic]. That same day, defendant sent another email from his Yahoo! email account with an attachment of a photo of an adult female lying on a bed wearing a "school girl" outfit exposing her vagina and her buttocks. In the text of the message, the defendant states that he wants "Lilly" to tell him that she wants the defendant to be the one to "pop her cherrie," which is common parlance for losing one's virginity.

On December 19, 2007, "Lilly" and defendant engaged in further chats in the Yahoo! chat room. During those chats, the defendant asked whether she had seen the videos, and whether they excited her. He continued to encourage "Lilly" to masturbate. He also again encouraged "Lilly" to "watch a clip to get you excited also if you like." He further explained how he wanted to have intercourse with "Lilly," and wanted to "pop her cherrie." [sic].

On January 2, 2008, defendant sent "Lilly" an email from his Yahoo! email account with an attachment titled "z3.mpeg". This attachment is a video clip of an adult male and female engaged in intercourse. In the email's text, the defendant stated that he wished that the two in the video were him and "Lilly."

That same day, the defendant and "Lilly" chatted in the Yahoo! chat room. During that chat, the defendant encouraged "Lilly" to masturbate, and he discussed that he was coming to Denver in a few days' time. He again explained to her, step by step, how to masturbate, and "Lilly" indicated that she was following his directions as they chatted. The defendant further discussed, using sexually explicit language and detail, sex acts that he wanted to perform on "Lilly" and that he wanted her to perform on him.

On March 13, 2008, Detective Cronce sought and obtained an arrest warrant for the defendant. The defendant was arrested in Corpus Christi, Texas. After his arrest, and after the defendant was advised of and waived his *Miranda* rights, the defendant admitted to his conduct as outlined above. During the interview, he stated that he had chatted with "Lilly" using his computer, that he knew she was 14 years old, and that he had sent her the obscene materials in the emails that are described above. He initialed printouts of the chats that he had with "Lilly" as

7

well as the emails that he sent to her. He read portions of the sexually explicit portions of the chats and agreed that he had written them.

Defendant admits that he used a facility in interstate or foreign commerce, namely a computer connected to the Internet, to knowingly transport obscene matter to a person he believed to be under the age of 16 years, and that he knew the nature of the contents of the obscene matter that he transported. Defendant further agrees that he distributed the materials to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct[1].

## V. SENTENCING COMPUTATION

The parties agree that the United States Sentencing Commission Guidelines Manual, 2008 Edition applies to this case.

Any estimation by the parties regarding the estimated advisory guideline application does not preclude either party from asking the Court to depart from the otherwise approximate guideline range at sentencing, if that party believes that there exists an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines. §5K2.0

The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any

---

[1] Under Colorado law, a person commits a crime if he is four years older than a child under fifteen, and knowingly importunes, invites, or entices the child through communication via a computer network or system to expose or touch the child's own intimate parts while communicating with the person via a computer network or system. Colo. Rev. Stat. § 18-3-405.4

position of the parties. §6B1.4(d). The Court is free, pursuant to §6A1.3 and §6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. §6B1.4 comm. §1B1.4.

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. §6B1.4(b). Recognizing the above, the parties offer the following as their estimation of the Guidelines calculations in this case.

**Offense Level**: The base guideline is § 2G3.1.

A. The base offense level is **10**. §2G3.1.

B. Because the distribution of the materials was to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, the offense level should be increased **+7**. § 2G3.1(b)(1)(E).

C. Because the offense involved the use of a computer, the offense level should be increased **+2**. § 2G3.1(b)(3).

D. Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by **-1** for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction.

E. The adjusted offense level is **16**.

**Criminal History Category**

F. The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative. Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court. Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") **I**. § 4A1.1.

### Guideline Ranges

G. The guideline range resulting from the estimated offense level of 16 and the estimated criminal history category of I is **21** to **27** months. However, the imprisonment range could be from 21 months (bottom of CHC I) to 57 months (top of CHC VI).

H. Pursuant to § 5E1.2, assuming the estimated offense level of 16, the fine range for this offense would be $5,000 to $50,000, plus applicable interest and penalties.

I. Pursuant to § 5D1.2, if the Court imposes the term of supervised release, that term shall be at least 2 years but not more than 3 years.

## VI. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the recommended sentence resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 2 Feb, 2009

JOE CAMACHO
Defendant

Date: 2 Feb 09

_____
LAFONDA JONES
Attorney for Defendant

Date: 2/2/09

_____
JUDITH A. SMITH
Assistant U.S. Attorney